**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

Plaintiff,

v.

NVIDIA CORPORATION and NVIDIA SINGAPORE PTE. LTD.,

Defendants.

CASE NO. 1:25-CV-01228-RP

**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. THE ASSERTED PATENT ..... 1

III. "LOCAL STATUS INFORMATION" / "NON-LOCAL STATUS INFORMATION" ..... 3

A. The claim language leaves the practical boundary unresolved ..... 3

B. The specification's contradictory disclosures create more uncertainty ..... 5

C. Empire's and Dr. Levitt's proposed constructions underscore the claims' indefiniteness ..... 7

IV. "LOCAL STATUS [HARDWARE] UNIT" ..... 9

A. The "local status [hardware] unit" is a means-plus-function limitation ..... 10

B. The "local status [hardware] unit" lacks corresponding structure and is therefore indefinite ..... 13

C. Empire's proposed structure is not clearly linked to the claimed function ..... 14

V. "AGGREGATION [HARDWARE] UNIT" ..... 15

A. The "aggregation [hardware] unit" is a means-plus-function limitation ..... 17

B. The claims expressly recite the function of the "aggregation [hardware] unit" ..... 18

C. The specification clearly links "aggregation [hardware] unit" to the structure in Figures 4-6 and related patent disclosure ..... 19

D. Empire's proposed additional corresponding structure lacks support ..... 19

VI. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
707 F.3d 1318 (Fed. Cir. 2013)....................7

*Akamai Techs., Inc. v. MediaPointe, Inc.*,
159 F.4th 1370 (Fed. Cir. 2025)....................4

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006)....................8

*Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*,
899 F.3d 1291 (Fed. Cir. 2018)....................10

*Dyfan, LLC v. Target Corp.*,
28 F.4th 1360 (Fed. Cir. 2022)....................10

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012)....................14

*Fintiv, Inc. v. PayPal Holdings, Inc.*,
134 F.4th 1377 (Fed. Cir. 2025)....................12, 14, 19

*Generation II Orthotics Inc. v. Med. Tech. Inc.*,
263 F.3d 1356 (Fed. Cir. 2001)....................18

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
No. 2:16-CV-00056, 2017 WL 2267304 (E.D. Tex. May 24, 2017)....................10

*Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*,
No. 3:16-CV-0364-N, 2020 WL 4260794 (N.D. Tex. Jul. 23, 2020)....................12

*In re Aoyama*,
656 F.3d 1293 (Fed. Cir. 2011)....................15

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)....................3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................3, 7

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
Nos. 2:15-CV-349, 2:15-CV-351, 2016 WL 6275390
(E.D. Tex. Oct. 25, 2016)....................10

*SIPCO, LLC v. ABB, Inc.*,
No. 6:11-CV-48, 2012 WL 3112302 (E.D. Tex. July 30, 2012) ............................................19

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021)...................................................................................................15

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)........................................................................................... passim

*WSOU Invs. LLC v. Google LLC*,
Nos. 2022-1066, 2022-1067, 2023 WL 6210607 (Fed. Cir. Sept. 25, 2023) ..........................10

## I. Introduction

Based on the claims and specification of U.S. Patent No. 8,694,704 (the "'704 patent"), the disputed limitations have either uncertain scope or specification-based restrictions. Plaintiff Empire Technology Development LLC ("Empire") cannot rewrite the intrinsic record through its constructions. First, the patent never provides an objective boundary between "local status information" and "non-local status information." The claims are opaque on the distinction, and the specification provides conflicting evidence about whether to classify an adjacent node's status information as "local" or "non-local." As a result, a person of ordinary skill in the art ("POSITA") is left to guess about what qualifies as "local" and "non-local" status information.

Second, "local status [hardware] unit" and "aggregation [hardware] unit" are means-plus-function limitations that require the '704 specification to disclose corresponding structure clearly linked to the claimed functions. The patent fails to do so for the "local status [hardware] unit," so that limitation is indefinite. For the "aggregation [hardware] unit," in contrast, the specification discloses particular structures in Figures 4-6, and the term should be limited to those structures and their equivalents. Defendants NVIDIA Corporation and NVIDIA Singapore Pte. Ltd.'s ("NVIDIA") claim construction proposals follow the intrinsic record and should be adopted.

## II. The Asserted Patent

The '704 patent"[1] relates to routing data in a network based on the level of congestion. '704 patent, Title, 3:45-67, 4:3-6. Each network node includes a "routing device" that steers data packets between other nodes. *Id.* 4:63-67. According to the patent, prior-art networks used "[a]daptive, or congestion-aware" methods to "rout[e] around congested areas." *Id.* 3:31-33. Those

[1] The patent is Ex. 1 to the Declaration of Jon Carter ("Carter Decl.") filed with this brief.

techniques leveraged "local congestion information" but did "not account for congestion in other areas of the network." *Id.* at 3:39-44.

The patent describes a "regional congestion awareness network" that considers both "local" and "non-local" status information. Excerpted Figure 2 below illustrates a grid embodiment with 16 nodes 104(1)-(16).[2] *Id.* 5:49-51. Data communication channels 201 and 203 (red arrows) connect the nodes and transmit "data packets" and "status information," respectively. *Id.* 5:51-56. The patent describes an example in which router 118 in node 104(11) (green) can determine "local status information" for its outgoing data channels and can receive "non-local status information" from adjacent nodes (yellow). *Id.* 6:45-52. The router then "combine[s]" the "local" and "non-local status information" and sends the resulting information to another node. *Id.* 6:54-60, 7:11-28.




As outlined in red in Figure 3 at the right, a router can include (1) "local status hardware unit/arrangement" 301 that "receive[s] status information" and "determine[s] local congestion metrics … for each of



F I G. 3

[2] Annotations and emphases added throughout this brief unless otherwise noted.

the outgoing data channels" and (2) "aggregation hardware unit/arrangement" 303 that "receive[s]" and "combine[s]" local congestion metrics and non-local status information. *Id.* 7:11-37. Examples of status information include "a count of free virtual channels," "a buffer count," "a crossbar demand metric," and combinations. *Id.* 6:12-41.

## III. "local status information" / "non-local status information"

| Term for Construction | Claims | Empire's Proposal | NVIDIA's Proposal |
|---|---|---|---|
| "local status information" / "non-local status information" | 1-21 | Plain and ordinary meaning | Indefinite |

NVIDIA contends that the claims fail to inform a POSITA with reasonable certainty of the scope of "local" and "non-local" status information. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). While status information relating to a node far away in the network would plainly be non-local, there is ambiguity regarding status information that an immediately adjacent neighbor node provides about itself. The claims do not clearly specify whether that information is "local" or "non-local." The specification then confirms, rather than resolves, that uncertainty by giving conflicting indications about how that adjacent-node information should be classified. Empire and its expert's proposed meanings likewise confirm that no objective boundary exists. As a result, the terms "local status information" and "non-local status information" are indefinite. Almeroth Decl. ¶ 71; *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims … must provide objective boundaries for those of skill in the art." (citation omitted)).

### A. The claim language leaves the practical boundary unresolved

The claims do not define "local" and "non-local" status information. They instead raise the practical question that drives the indefiniteness problem: when one node receives status

information from an adjacent node and that information concerns the adjacent node, is the information "local" or "non-local?" Independent claims 1 and 10 tie "local status information" to "output channels": they recite "***local status information*** regarding congestion for each of the [] plurality of ***output channels***." But each output channel has two ends—a transmitting end at the sending node and a receiving end at an adjacent node. *See* Almeroth Decl. ¶¶ 51-52. Congestion can happen at either end, just like a water pipe can be blocked at either end. *Id.* ¶ 51; Carter Decl. Ex. 2 (Levitt Dep. Tr.) 89:5-10 ("Congestion … can occur at either end"); *Id.* Ex. 3 (Almeroth Dep. Tr.) 52:15-54:20 ("the receiving node will have its own queue … [i]f that node is overloaded, then it might send feedback into the network…that tells the sender to stop sending data"). Against that backdrop, a POSITA cannot tell whether "status information" provided by an adjacent node about the channel's receiving end is "local" (because it relates to congestion on the channel connected to the sending node) or "non-local" (because it originates from and relates to the adjacent node). Almeroth Decl. ¶ 52.

Independent Claim 18 is equally vague. It recites a first node that computes "local status information" and a second node that sends "non-local status information" to the first node. But it says nothing about what constitutes this "local" or "non-local" status information and therefore provides no guidance on the scope of those terms. *Id.* ¶ 59.

Thus, the claim language does not supply "reasonably clear and exclusive definition[s]" of "local" or "non-local" that set objective boundaries for the terms. *Akamai Techs., Inc. v. MediaPointe, Inc.*, 159 F.4th 1370, 1378 (Fed. Cir. 2025) (citing *Interval*, 766 F.3d at 1373) (emphasis omitted). Instead, the adjacent-node classification problem remains unsettled.

Empire's expert, Dr. Levitt, incorrectly opines that claims 3 and 10 confirm that status information "relat[ing] to" an adjacent node is "non-local." Carter Decl. Ex. 5 (Levitt Decl.) ¶¶ 60-

61, 63. Without providing any explanation, he quotes language from claim 10 reciting a "third node" directly coupled to a first/second node that receives "non-local status information corresponding to the [first/second] node." *Id.* ¶ 61. But that language does not address, let alone settle, the adjacent-node classification issue. For example, the recited "non-local status information" could originate from or relate to ***non-adjacent*** nodes—those that are further away from the third node than the adjacent first/second nodes. In fact, the patent describes passing status information among multiple nodes connected in sequence, which leads to "propagation of congestion information." '704 patent, 6:50-7:7; Almeroth Decl. ¶¶ 55-58. Dr. Levitt also quotes language in claim 3 about "receiv[ing]" "non-local status information" from adjacent nodes. Carter Decl. Ex. 5 (Levitt Decl.) ¶ 60. But, as with the similar language in claim 10, that information could originate from or relate to non-adjacent nodes. Almeroth Decl. ¶ 56.

### B. The specification's contradictory disclosures create more uncertainty

Some parts of the specification classify "status information" received from an adjacent node as "local," while other parts of the specification indicate that such information is "non-local." For example, the patent purports to build on "existing adaptive procedures" that "rely on ***local congestion information*** (e.g., information ***readily available*** at a given router and ***at routers directly coupled to a given router***)." '704 patent, 3:39-44. A POSITA would understand this statement to mean exactly what it says: an adjacent node/router's status information can be classified as "local." Almeroth Decl. ¶¶ 65-66. The patent goes on to incorporate a 2005 prior art article ("Kim") that supports the same conclusion. Kim describes a "router architecture [that] uses … lookahead information obtained from neighboring routers, in providing routing adaptation." '704 patent, 6:22-30; Carter Decl. Ex. 4 (Kim) at 559; Almeroth Decl. ¶ 67. Kim's prior-art router includes a "pre-selection" unit that "select[s] the channel for a packet" based on: (1) the status of the "crossbar" connecting the router to adjacent routers and (2) "credits" that

"[n]eighboring routers send" "indicating … the amount of free buffer space available for each" channel. Carter Decl. Ex. 4 (Kim) at 560-61. The specification thus indicates to a POSITA that Kim's credits are "local," even though an adjacent node creates and provides them. '704 patent, 3:39-44 ("***existing adaptive procedures*** can rely on ***local*** congestion information … and do not account for congestion in other areas of the network"); Almeroth Decl. ¶ 67. Critically, Dr. Levitt never addresses the disclosure in column 3 in his declaration. '704 patent, 3:39–44. He also ignores Kim's teachings. That leaves Dr. Almeroth's opinions on those disclosures unrebutted. Almeroth Decl. ¶¶ 65-67.

By contrast, other specification disclosures indicate that an adjacent node's "status information" is "non-local." One example is Figure 2 (excerpted below left). Node 11 (green) is directedly coupled to adjacent nodes 7, 10, 12, and 15 (yellow). The patent explains that node 11 "***can receive non-local status information***" from "***adjacent nodes***." '704 patent, 6:50-57; Almeroth Decl. ¶ 68. Thus, information that node 11 receives from adjacent nodes 7, 10, 12, and 15 (yellow) can be "non-local." As a second example, the specification describes an embodiment having "[a] first routing device and [a] second routing device [that] may be indirectly, or not directly, coupled to one another, e.g., the first routing device and the second routing device may be separated by intermediate nodes and may be coupled via a third routing device." '704 patent, 3:45-67. The specification expressly points out that networked nodes can "be arranged in a ring," as illustrated below. *Id.* 5:64-6:2. B can send data to A directly (red arrow) or indirectly through C (blue arrows) if the direct path is congested. If an adjacent node's "status information" is classified as "local," this embodiment would fall outside the scope of the claims because there is no "non-local status information" in the network. Almeroth Decl. ¶ 69. A claim interpretation "that

excludes a preferred embodiment … is rarely, if ever, correct." *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (citation omitted).







The patent's inconsistent disclosures regarding the classification of adjacent-node information have significant practical consequences: they make it impossible to determine infringement. *See Nautilus*, 572 U.S. at 909 ("[A] patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." (citation modified)). A POSITA cannot tell which implementations are captured by the claims, and which are not. Almeroth Decl. ¶¶ 72, 75-76. The ring-shaped three-node embodiment described above provides an example. If "status information" that A provides to B through C (blue arrows) is classified as "non-local," the implementation would infringe; but if that information is classified as "local," it would not because there would be no non-local status information to combine as the claims require. *Id.* ¶ 74.

### C. Empire's and Dr. Levitt's proposed constructions underscore the claims' indefiniteness

Empire argues that "local status information" is "a node's own status information" and "non-local status information" is "status information for other nodes in the network." Carter Decl.

Ex. 6 (8/4/26 Canino email). Those proposed constructions do not resolve the adjacent-node classification problem because they contradict the specification. Almeroth Decl. ¶ 79. As described above, the patent and Kim show that adjacent-node information can be classified as "local." In addition, Empire's proposed constructions would render language in independent claims 1, 10, and 18 superfluous. Claim 1, for example, recites that "non-local status information [is] provided by at least one other node." That language is pointless if the meaning of "non-local information" itself requires the information to come from other nodes. *Id.* Empire's proposal therefore renders "non-local" redundant of other claim language, which violates a basic tenet of claim construction. *E.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").

And Dr. Levitt cannot settle on a clear boundary between "local" and "non-local" status information. He adopted at least three different definitions for those terms:

- "Local" information "***relates to*** the status of the ***node at issue***"; "non-local" information "***relates to*** the status of ***other nodes***." Carter Decl. Ex. 5 (Levitt Decl.) ¶ 59.
- "Local" information is "***generated within*** the respective node"; "non-local" information is "***not … generated within*** the respective node." *Id.* ¶ 71.
- "Local" information "***comes from within*** the node of interest"; "non-local" information "***comes from outside***." *Id.* Ex. 2 (Levitt Dep.) 102:15-103:9.

Dr. Levitt makes no attempt to reconcile these disparate formulations. That matters because the definitions differ in scope. For example, status information that "comes from" and is "generated by" an adjacent node is "non-local" under Dr. Levitt's second and third definitions. But if that same information "relates to" the node at issue, it qualifies as "local" under Dr. Levitt's first definition.

In sum, because the claims are ambiguous and the specification is contradictory, "local status information" and "non-local status information" are indefinite.

## IV. "local status [hardware] unit"[3]

| Term for Construction | Claims | Empire's Proposal | NVIDIA's Proposal |
|---|---|---|---|
| "local status [hardware] unit" | 1-17 | Plain and ordinary meaning<br><br>Empire does not agree that this term is subject to § 112, ¶ 6. Without waiving that position, and solely to the extent the Court determines that § 112, ¶ 6 applies, Empire proposes the following corresponding function and structure in the alternative.<br><br>**Recited Function:** "provid[ing] local status information regarding congestion for each of the plurality of output channels"<br><br>**Structure:** Local status hardware unit 301, including a microprocessor (.mu.P), a microcontroller (.mu.C), a digital signal processor (DSP), or any combination thereof, or logic for executing program instructions as well as other device blocks, such as e.g., an arithmetic logic unit (ALU), a floating point unit (FPU), a digital signal processing (DSP) node, registers, accumulators, etc. *See, e.g.*, '704 patent, 7:8-22, 7:28-32, Fig 3, 13:36-43,14:46-55, 14:64-15:13. | This term is subject to means-plus-function treatment under pre-AIA Section 112, ¶ 6.<br><br>**Recited Function:** "to provide [first] local status information regarding congestion for each of the [third] plurality of output channels"<br><br>**Structure:** The specification does not describe adequate corresponding structure. The term is therefore indefinite. |

The parties dispute whether the "local status [hardware] unit" is a means-plus-function limitation. If it is, the parties agree on the recited function—"provid[ing] local status information regarding congestion for each of the plurality of output channels"—but disagree on whether the

[3] This phrase refers to the "local status hardware unit" of claim 1 and the "local status unit" of claim 10.

patent discloses adequate corresponding structure for that function. As explained below, Section 112, ¶ 6 applies, and the patent does not provide the required structure, rendering term indefinite.

**A. The "local status [hardware] unit" is a means-plus-function limitation**

The term "local status [hardware] unit" is subject to Section 112, ¶ 6.[4] Although there is a presumption against applying Section 112, ¶ 6 when the claims lack the word "means," that presumption is overcome by showing that a POSITA "would not have understood the … limitation[] to connote structure in light of the claim as a whole." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc); *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1367 (Fed. Cir. 2022).

The term "local status [hardware] unit" does not signify structure to a POSITA. Almeroth Decl. ¶¶ 82-83. Beginning with the claim language, claims 1 and 10 require "a local status [hardware] unit configured to provide [first] local status information regarding congestion for each of the [third] plurality of output channels." The limitation is in traditional means-plus-function format, with the word "unit" replacing the term "means" and the rest of the limitation reciting the corresponding function.

"Unit" is a well-known nonce term that can substitute for "means" in the context of Section 112, ¶ 6. *See, e.g.*, *WSOU Invs. LLC v. Google LLC*, Nos. 2022-1066, 2022-1067, 2023 WL 6210607, at *4 (Fed. Cir. Sept. 25, 2023) ("A 'unit' could be almost anything."); *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1301 (Fed. Cir. 2018) ("the word 'unit' … does not, standing alone, connote any particular structure"); *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00056, 2017 WL 2267304, at *18 (E.D. Tex. May 24, 2017) ("identifying unit"); *Saint*

[4] This brief applies pre-AIA 35 U.S.C. § 112, ¶ 6.

*Lawrence Commc'ns LLC v. ZTE Corp.*, Nos. 2:15-CV-349, 2:15-CV-351, 2016 WL 6275390, at *20 (E.D. Tex. Oct. 25, 2016) ("spectral shaping unit").

In the claims of the '704 patent, "unit" is nothing more than "a black box recitation of structure." *Williamson*, 792 F.3d at 1350; Almeroth Decl. ¶¶ 82-83. Appending the phrase "local [hardware] status" does not fix the problem because that language has no structural meaning (*id.*) and stands in contrast to surrounding limitations, which recite conventional structures such as "output channels," a "router device," and "interconnections." The claims identify no circuit, processing element, data path, or algorithm that would inform a POSITA of how the "local status unit" obtains, processes, or communicates "local status information." That is functional claiming under Section 112, ¶ 6. *See Williamson*, 792 F.3d at 1351.

Nor does anything in the specification define a "local status unit" or otherwise explain how to implement it as structure. Instead, the '704 patent illustrates "local status unit" 301 (red outlining) as a literal black box in Figure 3 below and consistently describes it based solely on the functions it performs. *See, e.g.*, '704 patent, 7:11-28; Almeroth Decl. ¶ 86. Even Dr. Levitt concedes that a POSITA would understand the "local status unit" as nothing more than a generic "architectural block responsible for locally generated congestion information." Carter Decl. Ex. 5 (Levitt Decl.) ¶ 73.



FIG. 3

Dr. Levitt points to more passages from the specification in asserting that "'local status [hardware] unit' does not invoke Section 112, ¶ 6." *See id.* ¶¶ 78-86. But none demonstrates that

a POSITA would have understood "local status [hardware] unit" to connote particular structure. Instead, each passage either (1) describes the "local status unit" solely in terms of what it ***does*** rather than what it ***is*** ('704 patent, 7:8-22) or (2) says nothing about a "local status unit" at all (*id.* 4:14-20, 4:60-67, 6:42-50, 13:36-43, 14:46-55, 14:64-15:13). Almeroth Decl. ¶¶ 89-97.

In fact, Dr. Levitt's citations only underscore the lack of definite structure. Dr. Levitt points to nearly every piece of generic circuitry discussed in the '704 patent (e.g., registers, buffers, a microprocessor, a microcontroller, a digital signal processor, an ALU, or an FPU) as the claimed "local status [hardware] unit." Carter Decl. Ex. 5 (Levitt Decl.) ¶¶ 79, 83; *id.* Ex. 2 (Levitt Dep.) 133:1-142:9. He also effectively admitted that the specification itself lacks specific guidance on the structure or programming of the "local status [hardware] unit." Rather than pointing to a disclosed structure, he testified that a POSITA could figure out how to make one:

> [A] POSITA reading [the recited function] and understanding the disclosures within the specification and the discussion of the hardware that is there ***would know how to implement it in hardware*** from the specification.

*Id.* 124:3-16.

This is inadequate as a matter of law. "[T]he fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed." *Williamson*, 792 F.3d at 1351; *see also Fintiv, Inc. v. PayPal Holdings, Inc.*, 134 F.4th 1377, 1381-85 (Fed. Cir. 2025) (finding claims subject to § 112, ¶ 6 indefinite where they "recite function without reciting sufficient structure for performing that function" and "[t]he specifications do not provide additional disclosures other than reciting the function … using generic terms without providing any details about an algorithm to carry out the functions of using … different ... processors"); *Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*, No. 3:16-CV-0364-N, 2020 WL 4260794, *4-5 (N.D. Tex. Jul. 23, 2020) (disputed "unit" term "would not be

understood by persons of ordinary skill in the art at the relevant time to have a sufficiently definite meaning as the name for structure" where patentee's expert "indicate[d] that a POSITA aware of the prior art 'would be able to design'" the claimed unit). Thus, even if a POSITA could somehow select components from Empire's vast assortment of generic options and cobble together a circuit to perform the recited function, that does not constitute "sufficiently definite structure" for purposes of avoiding Section 112, ¶ 6. Empire's collection of general-purpose components only confirms that "local status [hardware] unit" is a means-plus-function term.

### B. The "local status [hardware] unit" lacks corresponding structure and is therefore indefinite

The law requires the specification to disclose corresponding structure for a means-plus-function limitation. *Williamson*, 792 F.3d at 1351. To qualify as corresponding structure, "the intrinsic evidence [must] clearly link[] or associate[] [a] structure to the function recited in the claim." *Id.* at 1352. If a POSITA "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite." *Id.* (citations omitted).

The '704 patent fails to provide clearly linked corresponding structure for the "local status [hardware] unit," which renders the term indefinite. Almeroth Decl. ¶ 87. The specification illustrates the "local status unit" 301 in Figure 3 above as a simple, non-descript box. And the accompanying text provides no more than a functional description of what the unit does:

> As illustrated in the example of FIG. 3, each router 118 can contain ***a local status hardware unit/arrangement 301*** configured to ***receive*** status information, which can be a local status information 305 to 311 for each outgoing channel of the router 118.... The local status hardware 301 may use the collected local status information 305 to 311 to ***determine*** local congestion metrics or statuses 313 to 319 for each of the outgoing data channels 205 to 211 based on the local status information 305 to 311.

> Additionally, the router 118 can include a separate aggregation hardware unit/arrangement 303 that can receive non-local status information 321 to 327, which can be a non-local congestion status from each of the neighboring nodes 104, as well as the local congestion metrics 313 to 319 determined by ***the local status hardware unit arrangement 301***.

’704 patent, 7:8-28. The patent mentions the “local status hardware unit” 301 just one other time in a long list of components, without providing any detail. *Id.* 2:8-63. These sparse disclosures do not identify to a POSITA any structures corresponding to the claimed function, let alone structures that are clearly linked to that function. Almeroth Decl. ¶¶ 87-88, 93-94; *see Fintiv*, 134 F.4th at 1385 (“[D]escribing ‘the results of the operation of an unspecified algorithm’ is not sufficient to transform the disclosure of a general-purpose computer into the disclosure of sufficient structure to satisfy § 112 ¶ 6.”) (citation omitted); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 518-19 (Fed. Cir. 2012) (holding claims indefinite where “just a black box” “represent[ed] the purchase-order-generation *function* without any mention of a corresponding structure”) (emphasis in original).

### C. Empire’s proposed structure is not clearly linked to the claimed function

Although Empire identifies purported corresponding structure for the “local status [hardware] unit,” none of it passes muster. Empire proposes:

> a microprocessor (.mu.P), a microcontroller (.mu.C), a digital signal processor (DSP), or any combination thereof … [or] logic for executing program instructions as well as other device blocks, such as e.g., an arithmetic logic unit (ALU), a floating point unit (FPU), a digital signal processing (DSP) node, registers, accumulators, etc.

Carter Decl. Ex. 5 (Levitt Decl.) ¶¶ 82, 88. This falls short for at least two reasons. First, it comes from a passage generally describing what a processing node may contain. ’704 patent, 4:1-20. But the passage never refers to the claimed “local status [hardware] unit” or its function. *Id.*; Almeroth Decl. ¶¶ 89-90. Nor does any other part of the specification ***clearly link*** Empire’s proposed

components to the "local status [hardware] unit." *Id.* ¶¶ 89-97. Second, the proposal is open-ended because it includes "e.g." and "etc.," which improperly encompasses unspecified components that would expand the claim to cover every structure that could potentially perform the function. *Id.* ¶ 91; *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1367-68 (Fed. Cir. 2021) ("It is not enough that a means-plus-function claim term correspond to every known way of achieving the claimed function …."); *In re Aoyama*, 656 F.3d 1293, 1300 (Fed. Cir. 2011) (rejecting "open ended" construction for corresponding structure). Section 112 does not permit such broad functional claiming.

Empire's proposal cites additional portions of the specification (*see* Carter Decl. Ex. 5 (Levitt Decl.) ¶¶ 83-84), but these also fail. First, Empire does not allege that any feature from the cited passages is actually part of any claimed structure. Second, none of the citations clearly links to sufficient structure for performing the function. 7:28-32 does not mention a "local status [hardware] unit" but describes the data format for local congestion metrics (e.g., as 6-bit integers), which does inform a POSITA about the structure that produces or handles that data. Almeroth Decl. ¶ 95. 13:36-43 refers to a generic "processing arrangement" described in generic functional terms, not specific structure for the claimed "local status [hardware] unit." *Id.* ¶ 96. And 14:46-55 and 14:64-15:13 do not mention a "local status [hardware] unit" at all; they instead recite generalized boilerplate about "modifications and variations" and using or software. *Id.* ¶ 97.

## V. "aggregation [hardware] unit"[5]

| Term for Construction | Claims | Empire's Proposal | NVIDIA's Proposal |
|---|---|---|---|
| "aggregation [hardware] unit" | 1-17 | Plain and ordinary meaning<br>Empire does not agree that this term is subject to § 112, ¶ 6. Without | This term is subject to means-plus-function |

[5] This phrase refers to the "aggregation hardware unit" of claim 1 and the "aggregation

| | | | |
|---|---|---|---|
| | | waiving that position, and solely to the extent the Court determines that § 112, ¶ 6 applies, Empire proposes the following corresponding function and structure in the alternative.<br><br>**<u>Recited Function</u>**<br><br>**Claim 1:** "receiv[ing] nonlocal status information provided by at least one other node of the plurality of nodes" and "capable of combining the non-local status information and the local status information to provide aggregate status information"<br><br>**Claim 10:** "combin[ing] the non-local status information corresponding to the first node and the first local status information to produce first aggregate status information"<br><br>**<u>Structure</u>:** Aggregation hardware unit 303 including a microprocessor (.mu.P), a microcontroller (.mu.C), a digital signal processor (DSP), or any combination thereof, or logic for executing program instructions as well as other device blocks, such as e.g., an arithmetic logic unit (ALU), a floating point unit (FPU), a digital signal processing (DSP) node, registers, accumulators, etc. *See, e.g.*, '704 patent, 8:10-26, 8:27-29, 8:47-50, Fig 4-6, 13:36-43,14:46-55, 14:64-15:13, 7:23-37 | treatment under pre-AIA Section 112 ¶ 6.<br><br>**<u>Recited Function</u>**<br><br>**Claim 1:** "to receive nonlocal status information provided by at least one other node of the plurality of nodes" and "to combine the non-local status information and the local status information to provide aggregate status information"<br><br>**Claim 10:** "to combine the non-local status information corresponding to the first node and the first local status information to produce first aggregate status information"<br><br>**<u>Structure</u>:** The circuits shown in aggregation unit 303 in Figs. 4 and 5, and in the aggregation unit in Fig. 6 (and their equivalents). *See, e.g.*, '704 patent, 8:10-9:12. |

The parties dispute whether the "aggregation [hardware] unit" in claims 1-17 is a means-plus-function limitation. If so, the parties' positions diverge on (1) a portion of the recited function for claim 1 and (2) the scope of corresponding structure. The record supports NVIDIA's positions.

unit" of claim 10.

### A. The "aggregation [hardware] unit" is a means-plus-function limitation

The term "aggregation [hardware] unit" is subject to Section 112, ¶ 6 for reasons similar to those for "local status [hardware] unit." *See supra*, § IV.A. The limitations reciting an "aggregation [hardware] unit" follow means-plus-function format, using the nonce word "unit." Figure 3 below depicts the "unit" as a simple box 303 (red outlining). And adding "aggregation [hardware]" does not impart any structure (e.g., circuits, logic, or an algorithm) that a POSITA would recognize as performing the claimed "receiv[ing]" and "combin[ing]" functions. Almeroth Decl. ¶¶ 100-104. Aggregation is merely a function.




F I G. 3

Dr. Levitt incorrectly opines that "'aggregation [hardware] unit' does not invoke Section 112, ¶ 6." *See* Carter Decl. Ex. 5 (Levitt Decl.) ¶¶ 94-102. He cites passages that describe numerous possible components of a network node from which "an 'aggregation hardware unit' ***may*** be implemented." *Id.* ¶ 95. For example, he identifies "hardware units that implement the[] types of functionality [of the 'aggregation hardware unit] … in the context of a multinodal system, including registers, buffers, microprocessors, microcontrollers, digital signal processors, an[d] ALU, FLU, or DSP node, etc." *Id.* ¶ 94; *see also id.* ¶ 98. This is the same open-ended list of components that Dr. Levitt proposes for the "local status [hardware] unit," which confirms that neither that term nor "aggregation [hardware] unit" conveys any specific structure. *Compare id.* ¶ 83 ("local status [hardware] unit"), *and* ¶ 98 ("aggregation [hardware] unit"). Dr. Levitt further asserts that "[a] POSITA would have understood a register or buffer could temporarily hold each

resulting 6-bit value and provide it as a signal or field to be received by the aggregation hardware." *Id.* ¶ 98. But the recited function of "an aggregation [hardware] unit" is not "temporarily hold[ing]" or "provid[ing]."

The other passages Dr. Levitt cites (*id.* ¶¶ 99-102) support NVIDIA's position: 8:16-23, 8:28-54, 8:58-67, and 9:3-12 collectively describe different "illustrative examples" of "aggregation module 303," showing that the term was ***not*** known to have a particular hardware structure. 8:13-16 generically refers to "a software module that is executed by the aggregation hardware within router 118" (of Figure 4), indicating that "aggregation unit" did not have a known structure in software either.

### B. The claims expressly recite the function of the "aggregation [hardware] unit"

Claim 1 requires "an aggregation hardware unit configured to ***receive*** non-local status information provided by at least one other node of the plurality of nodes, wherein the aggregation hardware unit is configured to ***combine*** the non-local status information and the local status information to provide aggregate status information." Claim 10 similarly requires "an aggregation unit configured to ***combine*** the non-local status information corresponding to the first node and the first local status information to produce first aggregate status information."

Should the Court find that "aggregation [hardware] unit" is a means-plus-function limitation (it is), the parties agree on the "combin[ing]" function in claim 10 and on the "receiv[ing]" function in claim 1, but they disagree about the "combin[ing]" function in claim 1. While NVIDIA's proposal ("to combine the non-local status information and the local status information to provide aggregate status information") tracks the claim language verbatim, Empire replaces "configured to" with "capable of." Empire provides no support for this change and did not even ask Dr. Levitt "to opine on that part of the construction." Carter Decl. Ex. 2 (Levitt Dep.) 149:12-18. Simply put, Empire has no justification for altering the claim as written. *See Generation*

*II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001) (a proposed claim construction must not "revise or ignore the explicit language of the claims"); *see also SIPCO, LLC v. ABB, Inc.*, No. 6:11-CV-48, 2012 WL 3112302, at *11 (E.D. Tex. July 30, 2012) ("Interpreting 'configured to' as requiring only mere capability would eliminate any meaningful limits to the claims."), *adopted sub nom. SIPCO, LLC v. ABB, Inc.*, No. 6:11-CV-48, 2012 WL 12842877 (E.D. Tex. Oct. 23, 2012); Almeroth Decl. ¶ 105.

### C. The specification clearly links "aggregation [hardware] unit" to the structure in Figures 4-6 and related patent disclosure

NVIDIA's proposal for corresponding structure—"[t]he circuits shown in aggregation unit 303 in Figs. 4 and 5, and in the aggregation unit in Fig. 6 (and their equivalents)" (*see, e.g.*, '704 patent, 8:10-9:12)—is correct. It relies on the specification's only disclosures of aggregation unit 303 in Figures 4-6, each of which performs the claimed "receiving" and "combining" functions as described in 8:10-54 (Fig. 4), 8:55-67 (Fig. 5), and 9:1-12 (Fig. 6). Almeroth Decl. ¶¶ 106-110. The patent identifies shift, weighting, addition, and averaging structures that ***receive*** non-local status information and ***combine*** it with local status information.

### D. Empire's proposed additional corresponding structure lacks support

Empire once again proposes as alleged structure an unbounded set of unprogrammed, general-purpose components, which is legally improper. Carter Decl. Ex. 5 (Levitt Decl.) ¶ 105 ("a microprocessor (.mu.P), a microcontroller (.mu.C), a digital signal processor (DSP), or any combination thereof … [or] logic for executing program instructions as well as other device blocks, such as e.g., an arithmetic logic unit (ALU), a floating point unit (FPU), a digital signal processing (DSP) node, registers, accumulators"); *Williamson*, 792 F.3d at 1351; *Fintiv*, 134 F.4th at 1381-85. Empire's proposal is based on the same citation (4:1–20) as for "local status [hardware] unit." But that passage does not mention aggregation unit 303 or the receiving or combining

functions, much less clearly link those functions to the listed components. Almeroth Decl. ¶¶ 111-114. Indeed, the fact that Empire cites the same paragraph for both terms showcases its improper efforts to identify generic components rather than specific structure for performing the recited function. Empire also cites 7:28-37, but that excerpt also does not mention an "aggregation [hardware] unit"; it merely discloses the data format for local congestion metrics without describing any circuitry or algorithm that receives and combines those metrics. *Id.* ¶ 115. Finally, Empire cites 13:36-43, 14:46-55, and 14:64-15:13, which repeat Empire's proposed structure for "local status [hardware] unit" and do not mention aggregation unit 303 or link any structure to its claimed functions. *Id.* ¶¶ 116-118.

## VI. Conclusion

NVIDIA respectfully requests that the Court adopt NVIDIA's proposed constructions.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Shaun W. Hassett with permission for Jon Carter*

Chad S. Campbell, Bar No. 012080
Tyler R. Bowen, Bar No. 025376
Aaron Matz, Bar No. 024108*
Elizabeth J. Baxter, Bar No. 037969*
Makenzi Galvan, Bar No. 039176*
**ASHURST PERKINS COIE US LLP**
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
Tel.: 602-351-8000
Fax: 602-648-7000
Chad.Campbell@ashurstperkins.com
Tyler.Bowen@ashurstperkins.com
Aaron.Matz@ashurstperkins.com
Lizzy.Baxter@ashurstperkins.com
Makenzi.Galvan@ashurstperkins.com

Jon Carter, Bar No. 4693008*
**ASHURST PERKINS COIE US LLP**
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Tel.: 212-262-6900
Fax: 212-977-1649
Jon.Carter@ashurstperkins.com

Philip A. Morin, Bar No. 256864*
**ASHURST PERKINS COIE US LLP**
11452 El Camino Real, Suite 300
San Diego, California 92130-2080
Tel: 858-720-5700
Fax: 858-720-5799
Phil.Morin@ashurstperkins.com

Shaun W. Hassett, SBN 24074372
Michael E. Jones, SBN 10929400
**POTTER MINTON, P.C.**
102 North College, Suite 900
Tyler, Texas 75702
Tel.: 903-525-2272
Fax: 903-531-3972
ShaunHassett@potterminton.com
MikeJones@potternminton.com

*Attorneys for Defendants NVIDIA Corporation and NVIDIA Singapore Pte. Ltd.*

*Admitted *pro hac vice*